UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN W. PECKHAM, JR.,           )
                                )
    Petitioner,                 )
                                )
v.                              )   Case No. 4:16-cv-00415-JCH
                                )
UNITED STATES OF AMERICA,       )
                                )
    Respondent.                 )

## MEMORANDUM AND ORDER

This matter is before the Court on John Peckham's Petition for Writ of Error Coram Nobis. (Petition, ECF No. 1.) The Government has filed a Response (ECF No. 12), and the Petition is ready for disposition.

## BACKGROUND

In February 1994, Peckham was convicted of mail fraud, wire fraud, and conspiracy to do the same. In August 1996, the Court sentenced Peckham to 37 months in prison and to two years of supervised release. The Eighth Circuit affirmed Peckham's convictions and sentence on appeal. *See United States v. Blumeyer*, 114 F.3d 758 (8th Cir. 1997). On March 25, 2016, Peckham, proceeding pro se, filed the instant Petition for coram nobis relief pursuant to the All Writs Act, 28 U.S.C. § 1651.[1] In his Petition, he asserts that his theft of honest services conviction and sentence must be vacated in light of *Skilling v. United States*, 561 U.S. 358

---

[1] A writ of coram nobis affords the same general relief as a writ of habeas corpus. However, it is not intended to be a substitute for an appeal or for proceedings brought pursuant to section 2255, and it is only available when the applicant is not in custody. *See United States v. Noske*, 235 F.3d 405, 406 (8th Cir. 2000) (per curiam); *United States v. Little*, 608 F.2d 296, 299 n.5 (8th Cir. 1979); *Azzone v. United States*, 341 F.2d 417, 419 (8th Cir. 1965) (per curiam).

1

(2010), and *Black v. United States*, 561 U.S. 465 (2010),[2] and that he is actually innocent of the crimes for which he was convicted. (ECF Nos. 1, 7.) Peckham also claims that "no reasonable jury would have found him guilty beyond a reasonable doubt in light of the now controlling mandates of *Santos*, *Skilling* and *Black*."[3]

**DISCUSSION**

"A writ of coram nobis is an 'extraordinary remedy,' and courts should grant the writ 'only under circumstances compelling such action to achieve justice' and to correct errors 'of the most fundamental character.'" *United States v. Camacho-Bordes*, 94 F.3d 1168, 1173 (8th Cir. 1996) (quoting *United States v. Morgan*, 346 U.S. 502, 511-12 (1954)). "Accordingly, a petitioner must show a compelling basis before coram nobis relief will be granted…and the movant must articulate the fundamental errors and compelling circumstances for relief in the application for coram nobis." *Id.* (quotations and citations omitted); *see also Morgan*, 346 U.S. at 511 ("Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice."). A petitioner must also provide sound reasons for his failure to seek appropriate earlier relief.[4] *See Morgan*, 346 U.S. at 512; *McFadden v. United States*, 439 F.2d 285, 287 (8th Cir. 1971).

As an initial matter, Peckham was not charged with or convicted of the crime of money laundering. Thus, to the extent he argues that his convictions cannot stand in light of *Santos*, his

---

[2] *See Skilling*, 561 U.S. at 408-09 (honest-services statute covers only bribery and kickback schemes); *Black*, 561 U.S. at 471 (under *Skilling*, federal mail-fraud statute criminalizes only schemes to defraud that involve bribes or kickbacks).
[3] *See United States v. Santos*, 553 U.S. 507, 514, 524 (2008) (money-laundering statute's term "proceeds" refers to "profits").
[4] The Court notes that Peckham has not provided any explanation as to why he waited more than five years after *Skilling* to file a petition seeking coram nobis relief.

claim is unavailing. *See United States v. Santos*, 553 U.S. 507, 514, 524 (2008) (money-laundering statute's term "proceeds" refers to "profits"). The Court further finds that, to the extent Peckham argues that his conviction for theft of honest services cannot stand in light of *Skilling*, his claim fails.

In *Skilling*, the Supreme Court held that the "honest-services theory of fraud," as set forth in 18 U.S.C. § 1346, is limited to schemes involving bribery and kickbacks. *See Skilling*, 561 U.S. at 400, 408-09. Here, the record demonstrates that Peckham took part in a scheme that involved bribery. In affirming Peckham's convictions and sentence on appeal, the Eighth Circuit found that the record demonstrated the following facts:

> In late December 1987, Peckham wrote a memorandum to Blumeyer regarding Dewey Crump, a member of Bel-Aire's board of directors. Crump was at the time a Missouri state representative and chairman of the House Insurance Committee. Peckham's memorandum requested $475 per month to cover Crump's expenses for an apartment, utilities, and furniture rental. Blumeyer's secretary attached a note to the memorandum that read, "John, Art said $400 per month for Dewey…" Crump was also on the payroll of one of Bel-Aire's affiliates at a salary of approximately $55,000 per year—which he did not report in financial disclosure statements—and had a company credit card, even though he apparently did no work for the company…Blumeyer and Peckham addressed considerable correspondences to Crump regarding insurance bills in the Missouri legislature. In February 1988, the House Appropriations Committee deleted from the MDI's appropriation bill an amount corresponding to the salary of Mark Stalhuth, the attorney responsible for the autumn 1987 audit of Bel-Aire. When the MDI's commissioner investigated, the chairman of the Appropriations Committee suggested that Stalhuth had made some enemies. The commissioner then spoke to Crump, who agreed to restore the funding if the MDI increased the salary of his uncle (an MDI employee) and hired another individual as an examiner. When the MDI complied, the funding for Stalhuth's position was restored.
>
> Crump also sponsored a 1989 legislative amendment that would have made it easier for Bel-Aire to meet the MDI's capital requirements, and he introduced a bill in 1990 that would have altered the requirements of Stalhuth's position so that Stalhuth would not have qualified for the job. In addition, Crump spoke to MDI examiners during a 1989 audit of Bel-Aire, mentioning a recently enacted statute that had raised their salaries and commenting that Blumeyer was a good businessman.

*Blumeyer*, 114 F.3d at 762-63. The Eighth Circuit rejected Peckham's challenge to the honest services component of the charges, reasoning as follows:

> [T]he jury reasonably could have concluded that the defendants schemed to deprive Missourians of [Crump's] honest services by appropriating his discretion for the benefit of Bel-Aire, a company in which…[Crump] concealed his interest…
>
> It is irrelevant that many of Crump's legislative efforts on behalf of Bel-Aire were not enacted into law in the language proffered by him. The defendants cite *United States v. Rabbitt*, 583, F.2d 1014, 1024-26 (8th Cir. 1978)…in which we reversed several of Rabbitt's convictions because there was no evidence of a tangible or intangible loss to the public. But they ignore another portion of that opinion, in which we affirmed Rabbitt's mail-fraud conviction for accepting a bribe to help insure the passage of a bill, even though the bill was subsequently vetoed by the governor and did not become law. *See id.* at 1019-23. The reasoning is simple: the public's right to the honest services of a public officer is violated when the officer uses a public position to pursue dishonest ends, not merely when the officer achieves a dishonest goal.

*Id.* at 766. Although predated by *Skilling*, the Eighth Circuit's decision addressed the bribery aspects of Peckham's scheme and rejected a fundamentally similar challenge to Peckham's conviction under section 1346. In addition, in 2014 the Seventh Circuit had occasion to address a claim under *Skilling* presented by Peckham's co-defendant Blumeyer, which is identical to the claim Peckham now asserts. The Seventh Circuit rejected Blumeyer's claim as follows:

> Blumeyer's claim fails under *Skilling*. He says his conduct did not amount to bribery or kick-backs, the only schemes that the Supreme Court held in *Skilling* are covered under § 1346. Blumeyer had paid the legislator to introduce and sponsor legislation that would benefit Blumeyer's company; in other words, Blumeyer *bribed* him. What Blumeyer really is saying is that the government's case highlighted legitimate business dealings and not fraudulent or illegal activities. The jury disagreed, and so did the Eighth Circuit…

*Blumeyer v. Walton*, No. 13-3356 (7th Cir. Jan 13, 2014) (emphasis original).

Contrary to Peckham's arguments that "[t]here were no bribes, no kickbacks, and no 'theft of honest services,'" the record establishes, and two Courts of Appeals have determined,

that the underlying scheme involved bribery. Therefore, the Court concludes that Peckham's claim under *Skilling* must fail. *See United States v. Keane*, 852 F.2d 199, 203 (7th Cir. 1988) ("The writ of error coram nobis is limited to defects that sap the proceeding of any validity…It was and is not a device to relitigate issues fully ventilated at the time of the conviction.").

Finally, the Court finds that Peckham's claim of actual innocence fares no better. Peckham asserts that his trial counsel was ineffective in failing to present additional evidence related to the finances and operations of Blumeyer's business, which he claims would have altered the outcome of the trial.[5] "In *Schlup v. Delo*, the Supreme Court recognized a habeas petitioner could present a claim of actual innocence as a 'gateway' to resurrecting procedurally defaulted claims of constitutional error which occurred in the underlying trial, but '[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Kidd v. Norman*, 651 F.3d 947, 951-52 (8th Cir. 2011) (quoting *Schlup v. Delo*, 513 U.S 298, 324 (1995)). To satisfy the fundamental miscarriage of justice exception, Petitioner must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Schlup*, 513 U.S. at 327 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror

---

[5] Specifically, Peckham alleges that there is "new" evidence demonstrating, among other things, that "the capital for BA was locked in a three-keyed safety deposit box which was controlled by the MDI"; that "the original surplus capital of BA was in a CD in BA's name via a Surplus Note approved by the MDI"; that "Mr. Crump was at least partly responsible for millions in premium income from California businesses"; that "Blumeyer believed then, and still believes today, that AGI was owned by two citizens of the United Kingdom, and clearly not by him"; that "both Blumeyer and his wife were permitted to continue their involvement with BA, as well as his other companies over these many years, all the while under the control of the MDI and the CCCC"; and that "no fine and restitution was ever imposed against Peckham." (ECF No. 7 at 13-16.)

5

would have convicted him in the light of the new evidence." *Id.* "The petitioner thus is required to make a stronger showing than that needed to establish prejudice." *Id.* The fundamental miscarriage of justice exception is "rare" and should be applied only in "extraordinary case[s]." *Id.* at 321.

Here, the Court fails to see how the evidence identified by Peckham was unavailable at trial, or how it could not have been discovered earlier through the exercise of due diligence. Thus, the Court finds that the evidence is not "new." *See Amrine v. Bowersox*, 238 F.3d 1023, 1028 (8th Cir. 2001) ("[E]vidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence"). In any event, the Court disagrees that it is more likely than not that no reasonable juror would have convicted Peckham in the light of the purportedly new evidence, particularly in view of the overwhelming amount of evidence that was presented against him during the month-long trial. Therefore, the Court finds that Peckham fails to meet the heavy burden required under *Schlup*. Moreover, as the Government notes, significant judicial resources have been expended in this case, and the Court agrees that the principle of finality should now prevail. *See Schlup*, 513 U.S. at 321-222 (fundamental miscarriage of justice exception seeks to balance societal interests in finality, comity, and conservation of scarce judicial resources with individual interest in justice which arises in extraordinary cases).

Based upon the foregoing, the Court will deny Peckham's Petition. Where, as here, the files and records of the case conclusively show that the defendant is not entitled to relief, no hearing is warranted. *See Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1105-06 (8th Cir. 2011); *United States v. Regenos*, 405 F.3d 691, 694 (8th Cir. 2005).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that John Peckham's Petition for Writ of Error Coram Nobis (ECF No. 1) is **DENIED**, and that his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Petitioner's Motions to Appoint Counsel (ECF Nos. 3, 13) are **DENIED**.

Dated this 21st day of September, 2016.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE